IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Civil Action No. 17-cv-00050-PAB-SKC

MARK JANNY,

     Plaintiff,

v.

SHEILA HARFORD and
CRISTIAN ORTEGA,

     Defendants.

---

# ORDER

---

This matter is before the Court on Defendants' Motion for Summary Judgment Pursuant to Fed. R. Civ. P. 56. The Court has subject matter jurisdiction under 28 U.S.C. § 1331.

## I. BACKGROUND

This case arises out of an assault by Victor Rocha-Estupian ("Rocha-Estupian") on plaintiff Mark Janny ("Janny") in the Washington County Jail (the "Jail") on February 11, 2015. Docket No. 112 at 2-3, ¶ 1, 5.[1]

That night was not Rocha-Estupian's first in the Jail. On July 7, 2012, an unknown Washington County Sheriff's Deputy wrote in a report that Rocha-Estupian "could be a threat to the safety and security of the facility as he might hurt someone if

---

[1] All facts are undisputed unless otherwise noted.

placed in an enclosed area with other inmates." Docket No. 116 at 5, ¶ 5.[2] Defendant Sheila Harford ("Harford"), a Jail deputy, may have seen the report at some point in 2012. *Id*. ¶ 6; Docket No. 118 at 5, ¶ 6. On July 22, 2012, while housed at the Jail, Rocha-Estupian threatened to commit suicide, an event that defendant Sheila Harford ("Harford"), a Jail deputy, observed and responded to. Docket No. 116 at 4, ¶¶ 2-3.

On February 11, 2015, Janny and Rocha-Estupian were transported to the Jail. Docket No. 112 at 2, ¶¶ 1-3. Prior to being booked into the Jail, Janny and Rocha-Estupian were placed in a holding cell ("Holding Cell 1") along with five or six other inmates. *Id*. ¶¶ 3-4. Janny and Rocha-Estupian were in Holding Cell 1 when Harford and defendant Cristian Ortega ("Ortega"), another Jail deputy, began their shift. *Id*. ¶ 4. Upon seeing Rocha-Estupian's name on the list of inmates in Holding Cell 1, Harford remembered Rocha-Estupian's July 22, 2012 suicide attempt. Docket No. 116 at 7, ¶17. Rocha-Estupian began banging and kicking on the door of the cell and demanding to be moved from Holding Cell 1. *Id*. at 4, ¶ 1. Rocha-Estupian told Harford that he was experiencing "severe mental health anxiety issues" and did not feel safe. *Id*. at 5, ¶ 7. Harford and Ortega did not move Rocha-Estupian from Holding Cell 1. *Id*. at 8, ¶ 25-16; Docket No. 118 at 7, ¶¶ 25-26.[3] Janny never informed either Harford or

---

[2] Defendants deny this fact on the basis that the report is "inadmissible double hearsay." Docket No. 118 at 5, ¶ 5. The report is not, however, offered to prove the truth of the matter asserted (that Rocha-Estupian presented a danger to other inmates); rather, it is offered to prove that defendants knew of the report's contents. Thus, it is not hearsay, and the Court considers the fact undisputed for the purposes of this motion.

[3] Defendants argue that Janny may not "rest upon the allegations in his pleadings" at the summary judgment stage. Docket No. 118 at 7, ¶ 25. However, "[a] district court may treat a verified complaint as an affidavit for purposes of summary

Ortega that (1) he did not want to be in the same cell as Rocha-Estupian; (2) he feared for his safety because he was in the same cell as Rocha-Estupian; or (3) Rocha-Estupian threatened him or others. Docket No. 112 at 3, ¶¶ 8-10. At approximately 11:00 p.m. that evening, Rocha-Estupian assaulted Janny. *Id.*, ¶ 5. Harford and Ortega responded to Holding Cell 1 as soon as they heard the disturbance. *Id.* ¶ 6. Rocha-Estupian was charged with third-degree assault for assaulting Janny. *Id.* ¶ 7.

On January 4, 2017, Janny filed this lawsuit. Docket No. 1. In the operative complaint, Janny asserts an Eighth Amendment or Fourteenth Amendment claim under 42 U.S.C. § 1983 against both Harford and Ortega, alleging that defendants acted with deliberate indifference to the substantial risk of serious harm posed by Rocha-Estupian by not separating Rocha-Estupian from other inmates when there was room available to do so. Docket No. 111 at 3-5, ¶¶ 1-17. On December 26, 2018, Harford and Ortega moved for summary judgment on the grounds that they are both entitled to qualified immunity. Docket No. 112.

---

judgment if it satisfies the standards for affidavits set out in [Rule 56(c)]." *Lantec, Inc. v. Novell, Inc.*, 306 F.3d 1003, 1019 (10th Cir. 2002) (citing *Conaway v. Smith*, 853 F.2d 789, 792 (10th Cir. 1988)) (internal quotations omitted). According to Rule 56(c)(4), an affidavit must "be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). Furthermore, a district court need not treat a verified complaint as an affidavit if "the allegations contained in the pleading are merely conclusory." *Conaway*, 853 F.2d at 793; *see also Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671-72 (10th Cir. 1998) ("The conclusory allegation in Plaintiff's complaint, although verified, are of . . . little help in carrying her burden under Rule 56(e)."). Because the allegations in the complaint satisfy the standards of Rule 56(c)(4), the Court treats non-conclusory statements in the complaint as an affidavit for purposes of this motion.

## II. LEGAL STANDARD

Summary judgment is warranted under Federal Rule of Civil Procedure 56 when the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-50 (1986). A disputed fact is "material" if under the relevant substantive law it is essential to proper disposition of the claim. *Wright v. Abbott Labs., Inc.*, 259 F.3d 1226, 1231-32 (10th Cir. 2001). Only disputes over material facts can create a genuine issue for trial and preclude summary judgment. *Faustin v. City & Cty. of Denver*, 423 F.3d 1192, 1198 (10th Cir. 2005). An issue is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party. *Allen v. Muskogee*, 119 F.3d 837, 839 (10th Cir. 1997).

Where "the moving party does not bear the ultimate burden of persuasion at trial, it may satisfy its burden at the summary judgment stage by identifying a lack of evidence for the nonmovant on an essential element of the nonmovant's claim." *Bausman v. Interstate Brands Corp.*, 252 F.3d 1111, 1115 (10th Cir. 2001) (internal quotation marks omitted) (quoting *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998)). "Once the moving party meets this burden, the burden shifts to the nonmoving party to demonstrate a genuine issue for trial on a material matter." *Concrete Works of Colo., Inc. v. City & Cty. of Denver*, 36 F.3d 1513, 1518 (10th Cir. 1994). The nonmoving party may not rest solely on the allegations in the pleadings, but instead must designate "specific facts showing that there is a genuine issue for trial."

*Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (internal quotation marks omitted). "To avoid summary judgment, the nonmovant must establish, at a minimum, an inference of the presence of each element essential to the case." *Bausman*, 252 F.3d at 1115. When reviewing a motion for summary judgment, a court must view the evidence in the light most favorable to the non-moving party. *Id.*

## III. ANALYSIS

### A. Qualified Immunity

Under the doctrine of qualified immunity, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982). When a defendant asserts a qualified immunity defense, the plaintiff has a "heavy two-part burden" of establishing "(1) that the defendant's action violated a federal constitutional or statutory right; and (2) that the right violated was clearly established at the time of the defendant's actions." *Grissom v. Roberts*, 902 F.3d 1162, 1167 (10th Cir. 2018) (internal quotation marks omitted). Failure to satisfy either prong of this test will result in a grant of qualified immunity to the defendant. *Id.* Courts are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

When evaluating a claim of qualified immunity, "'clearly established law' should not be defined 'at a high level of generality.'" *White v. Pauly*, 137 S. Ct. 548, 552

(2017) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011))). "The relevant, dispositive inquiry . . . is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Al-Turki v. Robinson*, 762 F.3d 1188, 1194 (10th Cir. 2014). Ordinarily, a right is clearly established if there is "a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts . . . have found the law to be as the plaintiff maintains." *Toevs v. Reid*, 685 F.3d 903, 916 (10th Cir. 2012) (internal quotation marks omitted). This does not require a case "*directly* on point." *Kisela v. Hughes*, 138 S. Ct. 1148, 1152 (2018) (internal quotation marks omitted) (emphasis added). On the other hand, precedent that merely states "a general proposition of applicable law" will not make a right "clearly established" for purposes of qualified immunity. *Grissom*, 902 F.3d at 1168. A right is clearly established only if existing precedent places "the statutory or constitutional question beyond debate." *Kisela*, 138 S. Ct. at 1152 (quoting *White*, 137 S. Ct. at 551)).

**B.   Eighth Amendment**

Janny asserts a claim against Harford and Ortega based on their failure to separate Rocha-Estupian from other inmates when there was room available. Docket No. 111 at 3-5, ¶¶ 1-17. This claim is evaluated under the Eighth Amendment.[4] "A prison official's 'deliberate indifference' to a substantial risk of serious harm to an

---

[4] Although pretrial detainees are protected under the Due Process Clause of the Fourteenth Amendment rather than the Eighth Amendment, courts apply "an analysis identical to that applied in Eighth Amendment cases" in determining whether a pretrial detainee's rights were violated at the time he was assaulted. *Lopez v. LeMaster*, 172 F.3d 756, 759 n.2 (10th Cir. 1999).

inmate violates the Eighth Amendment." *See Farmer v. Brennan*, 511 U.S. 825, 828 (1994); *see also Helling v. McKinney*, 509 U.S. 25, 33 (1993) ("The [Eighth] Amendment . . . requires that inmates be furnished with the basic human needs, one of which is 'reasonable safety.'" (citing *DeShaney v. Winnebago County Dep't of Social Servs.*, 489 U.S. 189, 199 (1989))). "The analysis [of an Eighth Amendment claim] should not be based on 'a court's idea of how best to operate a detention facility,'" but should reflect "the evolving standards of decency that mark the progress of a maturing society," which the Tenth Circuit has characterized as a "lofty standard." *DeSpain v. Uphoff*, 264 F.3d 965, 973-74 (10th Cir. 2001) (citing *Rhodes v. Chapman*, 452 U.S. 337, 351 (1981)). To prevail on the claim that Harford and Ortega violated the Eighth Amendment, Janny must show that (1) objectively, the harm he complains of is sufficiently "serious" to merit constitutional protection, and (2) Harford and Ortega were subjectively aware of a substantial risk to Janny's health or safety and acted in purposeful disregard of that risk. *Martinez v. Beggs*, 563 F.3d 1082, 1088 (10th Cir. 2009).

Regarding the objective element, Janny must establish that he was "incarcerated under conditions posing a substantial risk of serious harm," *Farmer*, 511 U.S. at 835, which requires "more than ordinary lack of due care for the prisoner's interests or safety." *Whitley v. Albers*, 475 U.S. 312, 319 (1986); *compare Benshoof v. Layton*, 351 F. App'x 274, 277 (10th Cir. 2009) (unpublished) (finding objective element satisfied where plaintiff was forced to remain in cell with stinging fire ants for six days), *with Montez v. Lampert*, 595 F. App'x 789, 792 (10th Cir. 2014) (unpublished) ("[A] 15-

7

year-old hernia operation would neither present symptoms readily ascertainable to a lay person, nor make it obvious to a lay person that a bottom-bunk assignment was necessary. Montez thus fails the objective prong of the *Farmer* test.").

As to the subjective element, the Eighth Amendment does not reach a prison official's conduct unless the official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837; *see also Verdecia v. Adams*, 327 F.3d 1171, 1175-76 (10th Cir. 2003) ("Deliberate indifference requires that the defendant's conduct is in disregard of a known or obvious risk that was so great as to make it highly probable that harm would follow, or that the conduct disregards a known or obvious risk that is very likely to result in the violation of a prisoner's constitutional rights." (internal citations omitted)). A prisoner must therefore establish "that the defendants knew he faced a substantial risk of harm and disregarded that risk, by failing to take reasonable measures to abate it." *Martinez*, 563 F.3d at 1089 (quotations omitted). An action or inaction unaccompanied by a subjective awareness of an unreasonable risk of harm does not constitute "punishment" within the meaning of the Eighth Amendment. *Farmer*, 511 U.S. at 837-38. A court "may infer the existence of this subjective state of mind from the fact that the risk of harm is obvious." *Hope v. Pelzer*, 536 U.S. 730, 738 (2002); *see also Farmer*, 511 U.S. 842 (noting that state of mind can be established with circumstantial evidence and "from the very fact that the risk was obvious"). The negligent conduct of a prison official is, in all cases, insufficient

to rise to the level of deliberate indifference. *Farmer*, 511 U.S. at 835 ("Eighth Amendment liability requires more than ordinary lack of due care for the prisoner's interests or safety" (quotations omitted)).

**C.   Analysis**

The Court need not decide whether Harford and Ortega's failure to move Rocha-Estupian to another holding cell violated Janny's rights under the Eighth Amendment. *See Pearson*, 555 U.S. at 236 (holding that lower courts may exercise their "discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand"). Even if Harford and Ortega's conduct did rise to the level of an Eighth Amendment violation, there was no clearly established law at the time of the assault that would have placed the "constitutional question beyond debate." *Kisela*, 138 S. Ct. at 1152 (quoting *White*, 137 S. Ct. at 551)).

Viewed in a light most favorable to plaintiff, the evidence shows that Harford and Ortega were aware of the following facts at the time Rocha-Estupian and Janny were in Holding Cell 1: (1) Harford was aware that Rocha-Estupian had threatened to commit suicide in the Jail in July 2012, Docket No. 116 at 4, ¶¶ 2-3; (2) in 2012, Harford may have seen a report by an unknown Washington County Sheriff's Deputy stating that Rocha-Estupian "could be a threat to the safety and security of the facility as he might hurt someone if placed in an enclosed area with other inmates;" *id*. at 5, ¶ 5; (3) Rocha-Estupian was banging and kicking on the cell door and demanding to be moved from Holding Cell 1, *id*. at 4, ¶ 1; (4) Rocha-Estupian told Harford that he was experiencing

9

"severe mental health anxiety issues" and did not feel safe, *id*. at 5, ¶ 7. Additionally, Janny never informed either Harford or Ortega that (1) he did not want to be in the same cell as Rocha-Estupian; (2) he was in fear for his safety because he was in the same cell as Rocha-Estupian; or (3) Rocha-Estupian threatened him or others. Docket No. 112 at 3, ¶¶ 8-10. There is no evidence that Rocha-Estupian had a history of assaulting either fellow inmates or jail deputies while in the Jail.

The Court finds these facts insufficient to demonstrate a violation of Janny's clearly established rights under the Eighth Amendment. Janny argues that the clearly established right violated by Ortega and Janny is "[t]he right to be free from the risk of inmate assault . . . if the official knows of and disregards the risk." Docket No. 116 at 15 (citing *Gonzales v. Martinez*, 403 F.3d 1179, 1186 (10th Cir. 2005)). However, as noted above, recent decisions by the Supreme Court have cautioned courts not to define the statutory or constitutional right at issue at too high a level of generality. *See, e.g.*, *White*, 137 S. Ct. 548. In *White*, for example, the Supreme Court reversed the Tenth Circuit's denial of qualified immunity in a Fourth Amendment excessive force case, holding that the general legal principles announced in *Tennessee v. Garner*, 471 U.S. 1 (1985), and *Graham v. Connor*, 490 U.S. 386 (1989), were not sufficiently particularized to the facts in *White* to create clearly established law outside of an obvious Fourth Amendment violation. *See White*, 137 S. Ct. at 552 (internal quotation marks omitted). Because the Supreme Court determined that the defendant's conduct was not a "run-of-the-mill Fourth Amendment violation," the Tenth Circuit's failure to "identify a case where an officer acting under similar circumstances as [the defendant]

was held to have violated the Fourth Amendment" necessitated reversal.  *Id.*

Heeding *White*'s warning with respect to the "clearly established" inquiry, the Tenth Circuit in *Perry v. Durborow*, 892 F.3d 1116 (10th Cir. 2018), reversed the denial of qualified immunity, holding, as the Supreme Court did in *White*, that the trial court had defined the right at issue "at an unacceptably high level of generality."  *Perry*, 892 F.3d at 1124 (quoting *White*, 137 S. Ct. at 552).  The court specifically determined that the two cases on which the district court had relied in denying qualified immunity, one of which stood for the "general proposition that it is clearly established that a prison official's deliberate indifference to sexual abuse by prison employees violates the Eighth Amendment," did not demonstrate that the defendant had violated the plaintiff's clearly established constitutional rights by failing to create and enforce policies to protect her from being raped by a male prison guard.  *Perry*, 892 F.3d at 1118-19, 1124.  With regard to three, more factually analogous cases cited by the plaintiff on appeal, the Court reasoned that the fact that "Durborow was unaware of any previous sexual assaults at the Jail remain[ed] a critical distinction" that rendered the other cases insufficient to place the constitutional question beyond debate.  *Id.* at 1127.

*White* and *Perry* illustrate the level at which district courts must define a plaintiff's constitutional rights for purposes of the qualified immunity analysis.  Applying that guidance in this case, the relevant inquiry is not whether Janny had a clearly established Eighth Amendment right to be protected from attack by another inmate.  Rather, to overcome defendants' qualified immunity defense, Janny must show that it was clearly established at the time of the assault that prison guards, presented with an

inmate with a past history of mental illness and attempted suicide, who had been evaluated two and a half years before as constituting a possible threat to hurt others if placed in an occupied cell, but who had no previous history of assaults on fellow inmates, act with deliberate indifference to a substantial risk of serious harm by failing to move the inmate to a single cell.

*Farmer* is insufficient, standing alone, to satisfy this burden. As the court noted in *Perry*, *Farmer* merely "set forth the appropriate framework for determining whether a prison official's deliberate indifference violates the Eighth Amendment." *Perry*, 892 F.3d at 1125. It did not "apply that framework to the facts of the case," but "remanded the constitutional question to the lower court for resolution." *Id.* In other words, the Supreme Court in *Farmer* did not decide whether the defendants acted with deliberate indifference to a substantial risk of serious harm by placing the plaintiff, a transgender inmate, in general population at a high security federal prison. *See Farmer*, 511 U.S. at 849 (remanding the case for the district court to determine, in the first instance, whether the defendants had violated the plaintiff's Eighth Amendment rights under the proper standard for deliberate indifference). Even if *Farmer* did resolve the ultimate constitutional question, the case involved materially different facts from the ones here. In *Farmer*, the prison officials allegedly acted with deliberate indifference by placing the plaintiff in general population at a high security prison despite knowing that her status as a transgender inmate would make her particularly vulnerable to sexual violence. *Id.* at 831. Here, in contrast, the asserted risk of harm did not arise from any particular vulnerability of Janny, but from Rocha-Estupian's history of attempted suicide and

apparent mental illness. Thus, this case involves a distinct inquiry into whether, and in what circumstances, the Eighth Amendment requires an inmate with a history of mental illness to be moved to a different cell for the protection of other inmates. Given these factual differences, and *Farmer*'s procedural posture, *Farmer* would not have made clear to reasonable deputies in defendants' position that the failure to move Rocha-Estupian to a single cell would constitute a violation of Janny's Eighth Amendment rights. *See Estate of Ford v. Ramirez-Palmer*, 301 F.3d 1043, 1051 (9th Cir. 2002) (concluding that *Farmer* would not have made clear to a "reasonable prison official when the risk of harm from double-celling psychiatric inmates with one another changes from being *a* risk of *some* harm to a *substantial* risk of *serious* harm"); *Shauf v. Rios*, 313 F. Supp. 3d 1262, 1273 (W.D. Okla. 2018) (finding *Farmer* insufficient to "alert officials in [the defendant's] position that misrepresenting relevant misconduct history or approving a violent inmate's transfer can pose a substantial risk to other inmates sufficient to implicate the Eighth Amendment").

The Court therefore turns to whether there is any other authority that would have placed the "constitutional question beyond debate." *Kisela*, 138 S. Ct. at 1152 (quoting *White*, 137 S. Ct. at 551)). Janny points to *Gonzales v. Martinez*, 403 F.3d 1179 (10th Cir. 2005), for the proposition that "[t]he right to be free from the risk of inmate assault is clearly established if the official knows of and disregards the risk." Docket No. 116 at 15. However, *Gonzales* is not factually similar to this case. In *Gonzales*, the Tenth Circuit found that there was a triable issue of fact as to whether defendant, the county sheriff overseeing a jail, knew of and disregarded a risk to inmates where there was

13

"undisputed evidence of [] physical assaults on inmates" by jail deputies and evidence that the sheriff knew of reported risks to inmate health and safety. *Gonzales*, 403 F.3d at 1187. *Gonzales* does not stand for the proposition that a prison official acts with deliberate indifference by failing to move an inmate with documented mental health issues but no history of assaulting other prisoners to a single cell, and is therefore insufficient to show that defendants here violated Janny's clearly established rights.

While there are other Tenth Circuit cases involving Eighth Amendment claims arising from inmate-on-inmate assaults, those cases are materially distinguishable from this one because they involved (1) direct threats to the victim leading up to the assault, *see, e.g.*, *Durkee v. Minor*, 841 F.3d 872, 874-76 (10th Cir. 2016) (denying qualified immunity to officer who unshackled inmate in booking area within view of an inmate he had previously threatened); *Miller v. Kastelic*, 601 F. App'x 660, 663-64 (10th Cir. 2015) (unpublished) (holding that genuine issue of fact precluded summary judgment on Eighth Amendment claim where prison official failed to act after being informed that inmate was being threatened by his cellmate and other members of a security threat group due to inmate's status as a sex offender); *Smith v. Freil*, 170 F. App'x 580, 581-83 (10th Cir. 2006) (unpublished) (reversing dismissal of Eighth Amendment claim where the plaintiff had expressed specific safety concerns associated with his testimony in a murder investigation and had been the victim of recent attacks by other inmates); (2) victims who, due to some personal characteristic or membership in a group, were particularly vulnerable to attack by other inmates, *see, e.g.*, *Miller*, 601 F. App'x at 663-64 (inmate targeted by security threat group based on status as sex offender); *Howard*

14

*v. Waide*, 534 F.3d 1227, 1239 (10th Cir. 2008) (inmate susceptible to violence who had been specifically targeted by members of the same gang in the past); *Smith*, 170 F. App'x at 581-83 (inmate concerned about safety due to his assistance in murder investigation); *Berry v. City of Muskogee, Okla.*, 900 F.2d 1489, 1496-99 (10th Cir. 1990) (inmate murdered by other inmates who he had implicated in a crime); or (3) perpetrators with a recent history of violent or disruptive behavior. *See, e.g.*, *Bloom v. Pompa*, 654 F. App'x 930, 932, 935 (10th Cir. 2016) (unpublished) (denying qualified immunity to an officer who, for purposes of disciplining a pretrial detainee, placed him with another inmate who was known by jail personnel to be violent and who, months before, had required two officers to transport him to segregation for failure to comply with the officer's commands to stop kicking and beating the door of his pod); *Mervin v. Furlong*, 208 F.3d 226, 2000 WL 248472, at *1-2 (10th Cir. 2000) (unpublished table decision) (affirming denial of qualified immunity to prison officials who moved an inmate into the same cell as the plaintiff while investigating whether the inmate had brutally raped another inmate at the facility). Notably, none of these cases address the situation in which an inmate with documented mental health issues, but with no history of violence toward other inmates or jail staff, is placed in a holding cell with other inmates with whom the inmate has no history of being incompatible.

The weight of authority from other circuits does not support the denial of qualified immunity. In *Shauf*, the district court held that case law from other circuits was sufficient to show that a prison official violated the plaintiff's clearly established rights by withholding information regarding a recent instance of violence by another inmate and

15

allowing that inmate to be transferred to medium security, where he assaulted the plaintiff. 313 F. Supp. 3d at 1271, 1273-75. *Shauf* and the cases it cites are materially distinguishable from this case because none involve an inmate with no history of violence toward other inmates. *See id.* at 1265, 1271 (inmate transferred to medium security less than two years after he stabbed another inmate); *see also Bowen v. Warden, Baldwin State Prison*, 826 F.3d 1312, 1316-17, 1321 (11th Cir. 2016) (inmate placed in cell with another inmate despite the fact that officials knew he had severe mental health issues, had assaulted his previous cellmate less than a month before, and was required, under prison policy, to be housed alone)*; Solis v. Cty. of Los Angeles*, 514 F.3d 946, 949, 957 (9th Cir. 2008) (ex-member of gang placed in "gang module" despite requests for protective custody); *Pierson v. Hartley*, 391 F.3d 898, 901 (7th Cir. 2004) (inmate transferred to unrestricted dormitory unit after six months in a different facility where he had engaged in violent conduct); *Greene v. Bowles*, 361 F.3d 290, 292, 294-95 (6th Cir. 2004) (transgender inmate who was particularly vulnerable to assault housed with inmate known to have "a long institutional history" of being violent and disruptive); *Calderon-Ortiz v. LaBoy-Alvarado*, 300 F.3d 60, 63, 65-66 (1st Cir. 2002) (Eighth Amendment claim based on prison officials' general failure to separate inmates according to their security risks and safety needs); *Billman v. Indiana Dep't of Corrs.*, 56 F.3d 785, 788 (7th Cir. 1995) (inmate housed with cellmate who had known "propensity to rape other inmates"); *Redman v. County of San Diego*, 942 F.2d 1435, 1438 & n.2 (9th Cir. 1991) (inmate raped by cellmate who, according to a report created that same month, had "been coercing and manipulating other inmates . . . for sexual

16

favors" (internal quotation marks omitted)), *abrogated by Farmer*, 511 U.S. 825.[5]

In summary, it was not clearly established at the time of the assault on Janny that Harford and Ortega's failure to move Rocha-Estupian to another cell would constitute a violation of other inmates' Eighth Amendment rights. Thus, Harford and Ortega are entitled to qualified immunity with respect to Janny's Eighth Amendment claim.

## IV. CONCLUSION

For the foregoing reasons, it is

**ORDERED** that Defendants' Motion for Summary Judgment Pursuant to Fed. R. Civ. P. 56 [Docket No. 112] is **GRANTED**. It is further

**ORDERED** that judgment shall enter for defendants Sheila Harford and Cristian Ortega and against plaintiff Mark Janny on plaintiff's Eighth Amendment claim. It is further

**ORDERED** that, within 14 days of the entry of judgment, defendants may have their costs by filing a bill of costs with the Clerk of the Court. It is further

**ORDERED** that this case is closed.

---

[5] Neither *Greene* nor *Billman* specifies when the inmate who perpetrated the violence had last engaged in violent conduct. *See generally Greene*, 361 F.3d at 294-95; *Billman*, 56 F.3d at 788.

DATED September 30, 2019.

BY THE COURT:

 s/Philip A. Brimmer
PHILIP A. BRIMMER
Chief United States District Judge